

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-26-00015-CV
_____

IN THE INTEREST OF B.M., III, A CHILD

On Appeal from the 324th District Court
Tarrant County, Texas
Trial Court No. 324-738684-23

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

This case involves the conservatorship of B.M. following the death of his mother in 2023. B.M.'s maternal Uncle and Father sought sole managing conservatorship of the child. A trial resulted in the trial court's award of sole managing conservatorship to Uncle, with Father having possessory-conservatorship rights. Father appeals.[1]

On appeal, Father argues that Uncle lacked standing to seek conservatorship of B.M. Because we find that Uncle had standing, we affirm the trial court's judgment.

## I.      Factual and Procedural Background

Uncle filed a petition in this suit affecting the parent-child relationship in 2023, after B.M.'s mother died. B.M. was six years old when the suit was filed. Uncle alleged in his petition that he had standing to file suit because "the child and the child's parent ha[d] resided for at least six months ending not more than [ninety] days preceding the date of the filing of th[e] petition." Uncle further stated in his petition that he had standing because he "is a relative of the child within the third degree of consanguinity and the requested orders [were] necessary because" Father "engaged in a history or pattern of child abuse and child neglect," and Father's appointment as a managing conservator "would significantly impair the child's physical health or emotional development."

Uncle attached to his petition an affidavit in support of claims stating that B.M. had been primarily living with Uncle since his birth, along with Mother, who passed away on August 3,

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

2023. Uncle alleged in his affidavit that Father had a "history or pattern of child neglect and abuse," that Father "has a criminal history for murder," and had pending charges "for unlawful possession of a firearm by a felon and theft of property in excess of $30,000.00." Uncle further stated in his affidavit that prior to her death, Mother did not allow Father unsupervised access to B.M. "due to concerns for the child's safety in [Father's] care."

Father filed a counterpetition seeking sole managing conservatorship of B.M. and filed a motion to dismiss Uncle's petition for lack of standing. The parties both appeared for a hearing before an associate judge, who denied Father's motion to dismiss for lack of standing, but awarded Father temporary possessory rights to B.M. The appellate record fails to include a transcript of that hearing.

On March 12, 2025, Uncle filed an amended motion to modify and for additional temporary orders to include allegations that Father was "charged with possession of child pornography related to [B.M.] and has been held in contempt of court for stealing $70,000[.00] from [B.M.]." Uncle swore in his affidavit supporting his amended motion that Father was charged with possession of child pornography in Starr County, which showed "sexual pictures" of B.M. and another child. Uncle's affidavit informed the trial court that Father had absconded from probation because the possession of child pornography constituted a violation of his probation out of Kauffman County. Uncle attached the State's second amended motion to revoke Father's community supervision to his affidavit. Uncle also attached to his affidavit an order finding Father in contempt of court for failing to deposit $70,000.00 into the registry of the court after selling property belonging to B.M. Uncle further stated in his affidavit that Father

3

was scheduled for a jury trial in Navarro County for felony charges of evading arrest and criminal mischief. Although Father and Uncle were both granted possession of B.M. in 2023 temporary orders, Uncle was awarded "primary possession" of B.M. on March 24, 2025, with Father only having supervised visitation of B.M., as a result of a hearing on Uncle's amended motion for temporary orders, the transcript of which is also not included in the appellate record.

After conducting discovery, the parties appeared for final trial on June 30, 2025. Father again raised the issue of standing, but the trial court overruled his complaint.

The first witness to testify at trial was Kay Brady-Hatfield, who was appointed by the trial court to complete a custody evaluation. According to Brady-Hatfield, Father admitted that he "served time" for a murder charge, "got out in 2015," and then reported charges for "reckless driving" and "a couple of theft charges." Brady-Hatfield said that Father's "adult daughter alleged that [Father] sexually abused her and physically abused her as well," which resulted in a 2016 police report of "a sexual incident" that occurred between Father and his daughter. Brady-Hatfield also testified that Father had a "child pornography charge" out of Starr County for alleged conduct in 2024 involving B.M. and his step-sibling. Even so, Brady-Hatfield noted that Child Protective Services had ruled out an August 2024 allegation that there was child pornography on Father's phone.

Brady-Hatfield testified that she interviewed B.M., who reported that he was "popped with a stick" by Father because "he wasn't walking fast enough to leave to go to school." Brady-Hatfield said that she asked B.M. if Father's punishment left a mark and he said "yes," rolled up

4

his sleeve, and showed the mark to her. A photograph of the mark was introduced into evidence. Even so, Brady-Hatfield said that she observed no significant harm to B.M.

Brady-Hatfield testified that Uncle's house was appropriate for B.M. and that she was concerned about Father because he had not exercised his visitation rights with B.M.[2] Brady-Hatfield testified that Father was "currently doing weekend jail, per his [community-supervision] officer, due to [community-supervision] violations." She was also concerned that Father told her he lives in DeSoto but he told his community-supervision officer that he lives in Kerens. Father also told Brady-Hatfield that "he would rather go to prison or die than pay child support." According to Brady-Hatfield, Father sold his son's interest in a home and "was requested to put [$70,000.00] into a registry for [B.M.]" but "denied knowing that that's what he was supposed to do with [the funds]." Brady-Hatfield recommended that B.M. remain with Uncle.

B.M.'s paternal Grandmother testified that Father lives with her and is a truck driver. Grandmother said that Father had remarried and his wife lived in Dallas. Grandmother said she was aware that there were pornographic photographs of Father's children on his phone and that Father served twenty-five years' imprisonment for murder.

Uncle testified that B.M. and Mother had lived with him since 2017, that Mother passed away in 2023, and that B.M. remained living with Uncle for almost a year after that. Uncle explained that Mother was the primary caretaker of B.M. and Father "didn't come around too much." Uncle said that Mother had filed for divorce but that it was never completed. He added that there was a court order for Father's visitation but Father "would always cancel because he

---

[2]According to Brady-Hatfield, Uncle had been charged as a juvenile for resisting arrest and injury to a child with intent of bodily injury, but there was no disposition of that criminal history.

5

had stuff he had to do." Uncle testified that Mother did not leave B.M. with Father unsupervised.

Uncle said that he had been with B.M. for the child's entire life and that they were bonded to each other. Uncle testified that since he was awarded primary possession of B.M. in March 2025, Father had missed four or five visits with B.M. Uncle noted that B.M. had a lot of family members living near Uncle, who made sure that B.M. saw his family members every day. Uncle testified that B.M. was never absent from school while in his care.

Uncle testified that B.M. had a "horseshoe kidney" and asthma. According to Uncle, B.M. was hit with a cord by Father while in Father's care for "messing with" his credit or debit card.

At trial, Father admitted that he (1) was previously found guilty by a jury of murder, (2) was found in possession of drugs before, (3) was spending weekends in jail "for a probation revocation hearing" after his community supervision was revoked for a theft charge in Travis County, and (4) had a pending trial scheduled for evading arrest in of Navarro County. Father also admitted that he was charged with possession of child pornography but refrained from answering further questions after invoking his Fifth Amendment[3] protection against self-incrimination.

Father said that he had no income at the time of trial. He admitted that he had received $70,000.00 from the sale of B.M.'s interest in real property, had been ordered to put the money into the registry of the court, but had failed to do so. Father said that he had "tied up [the money]

---

[3]*See* U.S. CONST. amend. V.

in an investment property" and did not have the money available to put into the court's registry. Father acknowledged that another contempt hearing was coming up in that case.

After hearing this evidence, the trial court entered a final order, which found that Uncle had standing to bring the suit, appointed Uncle as the sole managing conservator of B.M., and awarded Father possessory conservatorship of B.M.

## II.     Uncle Had Standing to Bring Suit

By two separate points of error, Father challenges Uncle's standing to file suit. "Standing is a constitutional prerequisite to maintaining a suit under Texas law." *In re A.M.S.*, 277 S.W.3d 92, 95 (Tex. App.—Texarkana 2009, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)).  The question of whether Uncle had standing to pursue this suit is subject to de novo review. *See In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018); *Rolle v. Hardy*, 527 S.W.3d 405, 415 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *In re B.S.N.*, No. 06-14-00042-CV, 2015 WL 65220, at * 2 (Tex. App.—Texarkana Jan. 6, 2015, no pet.) (mem. op.).

Uncle filed suit in 2023.  At that time, Section 102.003(a)(11) of the Texas Family Code provided "a person with whom the child and the child's . . . parent have resided for at least six months ending not more than [ninety] days preceding the date of the filing of the petition if the child's . . . parent is deceased at the time of the filing of the petition" had standing to bring a suit affecting the parent-child relationship.  Act of May 13, 2019, 86th Leg., R.S., ch. 130, § 2, sec. 102.003, 2019 Tex. Gen. Laws 220, 221 (amended 2025) (current version at TEX. FAM. CODE

7

§ 102.003(a)(11) (Supp.)).[4] "'Resided' in [S]ection 102.003(a)(11) has been defined as 'living together in the same household.'" *In re Clay*, No. 02-18-00404-CV, 2019 WL 545722, at *8 (Tex. App.—Fort Worth Feb. 12, 2019, orig. proceeding) (mem. op.) (quoting *Tex. Dep't of Protective & Regul. Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001)). Former Section 102.003(a)(11) was enacted to further the Legislature's "goal of providing stable home environments for Texas children." *In re P.D.M.*, 117 S.W.3d 453, 464 (Tex. App.—Fort Worth 2003, pet. denied).

Uncle had the burden to prove his standing to file suit by a preponderance of the evidence. *See In re Clay*, 2019 WL 545722, at *8. Even though a reporter's record from the hearing in which the associate judge overruled Father's motion to dismiss for lack of standing was not filed, the uncontested facts support the associate judge's finding.[5] Here, the record

---

[4]Section 102.003 was amended in 2025 to provide standing to

> a person who is the foster parent, relative, or designated caregiver of a child placed by the Department of Family and Protective Services in the person's home for at least [twelve] months ending not more than [ninety] days preceding the date of the filing of the petition, unless:
>
>> (A)     the child has been returned to the parent under Section 263.403 [of the Texas Family Code]; or
>>
>> (B)     the child has been placed with a parent and the suit by the Department of Family and Protective Services has been dismissed under Section 263.401 [of the Texas Family Code].

TEX. FAM. CODE ANN. § 102.003(a)(11). However, the Legislature specified that 2025 "changes in law made by this Act apply only to a suit affecting the parent-child relationship filed on or after the effective date of this Act," and further clarified, "[a] suit affecting the parent-child relationship filed before that date is governed by the law in effect on the date the suit was filed, and that law is continued in effect for that purpose." Act of May 21, 2025, 89th Leg., R.S., ch. 402 § 7; 2025 Tex. Gen Laws 1, 7.

[5]"When a reporter's record is necessary for appellate review and the appellant fails to file the reporter's record, a presumption arises that the reporter's record would support the trial court's judgment." *Rittenhouse v. Sabine Valley Ctr. Found., Inc.*, 161 S.W.3d 157, 165 (Tex. App.—Texarkana 2005, no pet.) (citing *Bryant v. United Shortline Inc. Assurance Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998)).

shows that B.M. and Mother lived with Uncle. Uncle swore in his affidavit that B.M. had lived with him since B.M.'s birth, that Mother had died on or about August 3, 2023, and that B.M. had remained in his care until suit was filed. At trial, Uncle again testified that B.M. had lived continuously with him since "about 2017" until he filed his petition. Father admitted that he had stopped living with Mother in 2019 and that he was not in the same home with B.M. as of January 1, 2023. As a result, we find that Uncle established standing under former Section 102.003(a)(11). Consequently, we overrule Father's complaints on standing.[6]

## III. Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted: June 17, 2026
Date Decided: August 12, 2026

---

[6]Father argues that Uncle lacked standing because the parental presumption that Father was a fit parent was not overcome. *See* TEX. FAM. CODE ANN. § 153.131. However, the language of Section 102.003(a)(11) does not require the rebuttal of the parental presumption. TEX. FAM. CODE ANN. § 102.003(a)(11). Even so, to the extent that Father's brief can be read to raise a separate point of error on this matter, Father fails to state or apply the proper standard of review or factors relevant to this analysis in his brief. *See* TEX. R. APP. P. 38.1(i). Further, Father does not apply the facts showing that he possessed child pornography on his phone that involved B.M. and B.M.'s step-sibling, as well as evidence of Father's expenditure of $70,000.00 belonging to B.M. in violation of a court order, criminal history, and prior allegations of sexual abuse involving his daughter, to his argument regarding the parental presumption. *See In re K.N.*, No. 24-0881, 2026 WL 1614378, at *10–11 (Tex. June 5, 2026) (discussing how violent criminal conduct and a parent's treatment of other children can rebut the parental presumption); *In re S.T.*, 508 S.W.3d 482, 491–92 (Tex. App.—Fort Worth 2015, no pet.).